1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL PROVENCIO | Civil No.    06cv1760-L (CAB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
| CHRIS CHRONES, Warden, | |
| Respondent. | |

This Report and Recommendation is submitted to United States District Judge M. James Lorenz pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

I.  PROCEDURAL HISTORY

Angel Provencio is a state prisoner who is represented by counsel and is proceeding with a First Amended Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. [Doc. No. 13.][1] Petitioner challenges his sentence of 27 years to life for possession of 0.21 grams of methamphetamine on the following grounds: (1) Petitioner's sentence violates his protection against cruel and unusual punishment, as guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution [Doc. No. 13 at 6]; (2) Petitioner's trial counsel functioned ineffectively at his sentencing, violating his right to counsel under the Sixth and Fourteenth Amendments to the United

---

[1] Petitioner filed his original Petition in pro per on August 25, 2006. [Doc. No. 1.] Respondent filed an answer to the original petition on December 12, 2006. [Doc. No. 8.] On January 29, 2007, Michael Romano filed a notice of appearance on behalf of Petitioner. [Doc. No. 10.] On the same date, Petitioner (now represented by counsel) filed a motion to amend the petition. [Doc. No. 11.] On January 30, 2007, the court granted Petitioner leave to amend. [Doc. No. 12.] On April 2, 2007, Petitioner filed the First Amended Petition for Writ of Habeas Corpus. [Doc. No. 13.]

1

1   States Constitution (hereinafter the "current" Sixth Amendment claim) [Doc. No. 13 at 6].  At the same

2   time that Petitioner filed the First Amended Petition, he also filed a motion to hold the federal habeas

3   petition in abeyance in order to exhaust his current Sixth Amendment claim in California state courts.

4   [Doc. No. 14.] On April 25, 2007, Respondent filed an opposition to the motion to hold the federal

5   petition in abeyance. [Doc. No. 16.]  On April 30, 2007, the court granted Petitioner's motion to hold the

6   federal habeas petition in abeyance. [Doc. No. 17.] On May 1, 2007, Petitioner filed a Petition for Writ

7   of Habeas Corpus containing Petitioner's unexhausted current Sixth Amendment claim in the California

8   state courts. [Doc. No. 18.] On February 18, 2009, the California Supreme Court denied Petitioner's

9   state habeas corpus petition, making Petitioner's claims in this proceeding fully exhausted. [Doc. No.

10  37.] On March 5, 2009, this Court granted Petitioner's request for supplemental briefing and set a

11  briefing schedule. [Doc. No. 39.] On March 25, 2009, Petitioner filed a Supplemental Memorandum in

12  Support of Petition for Writ of Habeas Corpus; Exhibits A, B. [Doc. No. 40.] On May 27, 2009,

13  Respondent filed an Answer to the First Amended Petition for Writ of Habeas Corpus and a

14  Memorandum of Points and Authorities in Support of the Answer to the First Amended Petition. [Doc.

15  No. 44.] On June 25, 2009, Petitioner filed a Traverse to the Petition. [Doc. Nos. 45, 46.]

16                                              II.  STATE PROCEEDINGS

17          In a four-count Information filed in the San Diego County Superior Court on December 31, 2003,

18  Petitioner was charged with possession of 0.21 grams of methamphetamine in violation of Cal. Health

19  and Safety Code section 11377(a) (felony) (count 1), driving under the influence of a controlled

20  substance in violation of Cal. Vehicle Code section 23152(a) (misdemeanor) (count 2), being under the

21  influence of a controlled substance in violation of Cal. Health and Safety Code section 11550(a)

22  (misdemeanor) (count 3), and unauthorized possession of a hypodermic needle in violation of Cal.

23  Business and Professions code section 4140 (misdemeanor) (count 4). [Lodgment 1 at 1-5.] It was also

24  alleged that Petitioner had previously been convicted of three felonies, making him eligible for

25  sentencing under California's Three Strikes Law (Cal. Penal Code sections 667(b) thru (i) and 1170.12).

26  Finally, the information alleged that Petitioner had been convicted of two in-prison offenses for

27  possession of a controlled substance. [Lodgment 1 at 3, 4.]

28          On April 20, 2004, Petitioner pled guilty to count 2 (driving under the influence of a controlled

    substance) and count 3 (being under the influence of a controlled substance). [Lodgment 1 at 21-26]

1  Petitioner also waived his right to a jury trial on the alleged sentence enhancements and admitted three

2  prior "strike" offenses within the meaning of Cal. Penal code seion 667(d)(1) and two in-prison drug

3  offenses. [Lodgment 2, Vol. 2 at 33-37.]

4       On May 23, 2003, a jury found Petitioner guilty of count 1 (possession of methamphetamine) and

5  count 4 (unauthorized possession of a hypodermic needle). [Lodgment 1 at 91-92, 150; Lodgment 2,

6  Vol. 5 at 277-78.]

7       On December 9, 2004, Petitioner appeared before the state trial court for a probation hearing and

8  sentencing. [Lodgment 1 at 159; Lodgment 2 at 600-610.]  First, the trial court (Hon. Raymond

9  Edwards, Jr.), addressed the Petitioner's motion to dismiss prior convictions alleged under three strikes

10  law in furtherance of justice pursuant to Cal. Penal Code section 1385.  The Court denied Petitioner's

11  motion and, after reviewing the pertinent case law, stated as follows:

12       So it is in light of these cases that the court examines the request by counsel to
        exercise leniency and strike the strikes pursuant to 1385.  As Mr. Provencio has here
13      noted, he spent some 15 years in prison.  The matter which brings him before the court
        sets out that he has in the case before the court SCS180860, two prison priors.  So prison
14      has not had the desired effect, which is convincing the defendant to conform his behavior
        to the requirements of the law.
15           Counsel and the defendant here today say that defendant has a sickness, which is
        his chemical dependency.  This is something that the defendant has known for the period
16      of time that he has been involved with the taking of drugs.  Yet, no positive action has
        been taken to deal with this issue.  And the record before the court, if you look at the
17      probation officer's report, beginning at page 3 where it lays out the defendant's criminal
        history at page 4, 5 and 6, the criminal conduct of the defendant basically has gone
18      unabated for 20 years.  And because of this 20-year history – as the court pointed out in
        1980, these recidivist statutes, which is the three strikes law, have harsher sentences
19      because they deal with people who by repeated criminal acts have shown that they are
        incapable of conforming to the norms of society.
20           And Mr. Provencio, in looking at this history and the efforts at rehabilitation that
        have been made in the past – you were a ward of the court, and there were, through the
21      1980's, efforts to deal with you in the juvenile justice system.  In the late 80's, you came
        into the adult court, and after being in adult court, efforts were made at probation, and
22      probation having not been successful.  And then the continued criminal activity, including
        the first degree burglary, led to a prison commitment.  And the fact that these prison
23      commitments, following this long effort at local rehabilitation, have failed, still has not
        had the desired effect.
24           So in light of the nature of the offense, which is the repetitive nature of your
        criminal conduct – although the particular offense is not, by any stretch of the
25      imagination, the most serious of offenses that we see coming before the court, it is the
        inability to conform your conduct to the requirements of the law that causes the court to
26      deny the motion to strike the strikes pursuant to 1385.  So that motion is denied for the
        reasons stated, based upon the citations cited.
27  [Lodgment 2, Vol. 6 at 606-608.]

28       The trial judge then sentenced Petitioner to a term of twenty-five years to life for count one

   (possession of methamphetamine), plus an additional two years for the two prison priors. [Lodgment 1 at

159; Lodgment 2, Vol. 6 at 608-610.]   On the remaining counts, the court sentenced Petitioner to 180 days to be served concurrently with his punishment under Count 1 and also gave him credit for time served. [Id.]

Petitioner filed a direct appeal, contending that his sentence of twenty-five years to life was cruel and unusual punishment, in violation of the United States and California Constitutions. [Lodgment 7 at 27-47.] Petitioner also argued that his Sixth and Fourteenth Amendment right to effective assistance of counsel had been violated because: his trial counsel failed to object to unqualified witness testimony regarding the lack of fingerprinting that usurped the jury's fact-finding role on the question of appellant's guilt or innocence;  allowed the witness to bolster his own testimony; and failed to obtain essential evidence that deprived appellant of a crucial aspect of his defense (hereinafter the "previous" Sixth Amendment claim). [Lodgment 7 at 4-26.][2] On January 5, 2006, the California appellate court rejected his appeal. [Lodgment 4 – People v. Provencio, No. D045641, slip op. (Jan. 5, 2006).] On February 6, 2006, Petitioner filed a Petition for Review with the California Supreme Court. [Lodgment 5].  On March 15, 2006, the California Supreme Court summarily denied Petitioner's petition for review. [Lodgment 9.]

On April 24, 2007, Petitioner filed a Petition for Writ of Habeas Corpus containing Petitioner's current Sixth Amendment claim to the San Diego County Superior Court. [Doc. No. 10.] On August 8, 2007, the Superior Court denied the petition. [Lodgment 14.] On February 28, 2008, Petitioner filed a Petition for Writ of Habeas Corpus containing Petitioner's current Sixth Amendment claim in the California Court of Appeal. [Lodgment 15.] On June 30, 2008, the Court of Appeal denied the petition. [Lodgment 16.] On July 18, 2008, Petitioner filed a Petition for Writ of Habeas Corpus containing Petitioner's current Sixth Amendment claim in the California Supreme Court. [Lodgment 17.] On February 18, 2009, the California Supreme Court denied Petitioner's state habeas corpus petition. [Doc. No. 40; Lodgment 18.]

### III. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. See 28 U.S.C. § 2254(e)(1); see also Parke v. Raley, 506 U.S. 20, 35-36, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992)

---

[2]Petitioner is not pursuing the previous Sixth Amendment claim in this federal habeas petition. See Doc. No. 46 at 3.

06cv1760

(holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The relevant facts as found by the state appellate court are as follows:

>  At about 12:55 a.m. on December 13, 2003, Chula Vista Police Officer Randy Smith made a traffic stop of a blue Honda Civic that had made an unlawful lane change and U-turn. Provencio, its driver, leaned his head out of the window, looked back at Smith, and then stopped the car. Provencio was fidgety. There were no other persons in the car.
>
>  Smith saw Provencio's right hand repeatedly move down toward the center console. Although Smith directed him to place his hands on the steering wheel, Provencio continued to move his right hand down toward the console. Smith asked for Provencio's license and car registration and directed him to get out of the car. Smith searched Provencio's pockets and found a small cap that fits over the plunger part of a hypodermic syringe. Smith searched the car and found the plastic gearshift and parking brake housing was loose and missing some screws. [3] Smith pulled from the plastic housing several items, including a plastic bag, a plastic tube with red caps on both ends, and a hypodermic syringe. The plastic cap Smith found in Provencio's pants pocket fit the syringe found in the car. Smith examined Provencio's arms, which had old and fresh injection marks.[4]
>
>  Inside the plastic bag was a baggie containing a white, crystalline substance.[5] Smith performed a "DRE" evaluation of Provencio. Provencio was fidgety and hyperactive, and had dilated pupils. His pupils reacted slowly to light. Even after being seated for 15 minutes, his pulse rate was an abnormally high 120 beats per minute.
>
>  At the police station, Smith continued his examination of Provencio, asking him questions, measuring his pulse and blood pressure, conducting a field coordination test, and measuring his pupils in different lighting conditions. Smith formed the opinion Provencio was under the influence of a controlled substance, possibly a nervous system stimulant. A test of Provencio's urine sample measured 102,691 nanograms of methamphetamine.
>
>  An information charged Provencio with possession of methamphetamine (Health & Saf. Code, § 11377, subd.(a)), driving under the influence (Veh. Code, § 23152, subd. (a)), being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), and unauthorized possession of a hypodermic needle (Bus. & Prof. Code, § 4140). It also alleged Provencio had two prison priors (Pen. Code, §§ 667.5, subd. (b), 668) and four prior serious or violent felony convictions within the meaning of the three strikes law (Pen. Code, §§ 667, subd. (b)-(I), 1170.12, 668). Before trial, Provencio pleaded guilty to the second and third counts and admitted the truth of allegations he had two prior "strike" convictions and two prior prison convictions.
>
>  At trial, Smith testified as described *ante.* In Provencio's defense, his sister, Diana Provencio (Diana), testified she and Provencio lived in their mother's home. Although Diana did not have permission to use Provencio's car, she drove it the day before Provencio's arrest, took screws out of its console, and hid a bag of

---

[3] [footnote in original] At trial, Smith testified that based on his training and experience, it was common for people to conceal contraband and weapons in the gearshift housing.

[4] [footnote in original] At trial, Smith testified that based on his training, fresh injection marks appear as small red dots for about eight hours and may be oozing. After that period, a scab begins to form and is formed about 18 to 20 hours later. Methamphetamine can be injected, as well as smoked, snorted or swallowed.

[5] [footnote in original] At trial, the parties stipulated the baggie contained .21 grams of methamphetamine, a usable quantity.

methamphetamine and a needle in it. That day she bought about "30 cents" of methamphetamine, but used only "about a dime of it." She lost the cap to the syringe when she hurried back into the house to avoid her brother's detection that she had used his car. Despite her brother's arrest, she did not report her version of events to police until April 7, 2004.

The jury found Provencio guilty of possession of methamphetamine and unlawful possession of a hypodermic needle.

The trial court sentenced him to 25 years to life for possession of methamphetamine under the three strikes law and to two consecutive, one-year enhancements for his prison prior convictions, for an aggregate term of 27 years to life.

Provencio timely filed a notice of appeal.

[Lodgment 4 at 2-4.]

## IV. DISCUSSION

For the foregoing reasons, the Court finds that Petitioner's claims do not merit habeas relief. The Court therefore recommends that judgment be entered denying the First Amended Petition.

A. Standard of Review

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. Lockyer v. Andrade, 538 U.S. 63 (2003). A state court's decision is "contrary to" clearly established Federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. See Early v. Packer, 537 U.S. at 8 (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

Under the "unreasonable application prong" of section 2254(d) (1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court decision "involves an

1  unreasonable application" of clearly established federal law if it identifies the correct governing Supreme

2  Court law but unreasonably applies the law to the facts). A state court's decision "involves an

3  unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a

4  legal principle from [Supreme Court] precedent to a new context where it should not apply, or

5  unreasonably refuses to extend that principle to a new context where it should apply." Williams v.

6  Taylor, 529 U.S. at 407 (citation omitted).

7       "In order for a federal court to find a state court's application of [Supreme Court] precedent

8  'unreasonable,' the state court's decision must have been more than incorrect or erroneous." Wiggins v.

9  Smith, 539 U.S. 510, 520 (2003) (citation omitted). "The state court's application must have been

10  'objectively unreasonable.' " Id. at 520-21 (citation omitted); see also Clark v. Murphy, 331 F.3d 1062,

11  1068 (9th Cir.), cert. denied, 540 U.S. 968 (2003). In applying these standards, this Court looks to the

12  last reasoned state court decision, here the decision of the Court of Appeal. See Delgadillo v. Woodford,

13  527 F.3d 919, 925 (9th Cir.2008).

14  B.  Petitioner is not entitled to habeas relief as to his Eighth Amendment claim.

15       Petitioner argues that his sentence violates the Eighth Amendment's protection against cruel and

16  unusual punishment because it was grossly disproportionate to the crime. [Doc. No. 40 at 5.] He further

17  argues that the state court's denial of Petitioner's Eighth Amendment claim was both contrary to and an

18  unreasonable application of clearly established law as determined by the Supreme Court. [Id.] In

19  particular, Petitioner argues that the California Court of Appeal's failure to review Petitioner's sentence

20  using the three objective factors for determining whether a sentence is unconstitutionally

21  disproportionate was contrary to Supreme court holdings set forth in Ewing v. California, 538 U.S. 11

22  (2003), Solem v. Helm, 463 U.S. 277 (1983), and Harmelin v. Michigan, 501 U.S. 957 (1991). [Id.]

23       Respondent argues that the Supreme Court precedent limits the inference of gross

24  disproportionality to the "'exceedingly rare' and 'extreme case.'" [Doc. No. 44-2 at 22 (citations

25  omitted).] According to Respondent, Petitioner's sentence "cannot be reasonably deemed grossly

26  disproportionate to his crime in light of this current offenses [sic] and his lengthy history of criminal

27  recidivism." [Id.] Thus, Respondent argues, the state Court of Appeal's denial of Petitioner's Eighth

28  Amendment claim was not contrary to nor an unreasonable application of Supreme Court precedent.

[Doc. No. 44-2 at 19.]

In the Traverse, Petitioner responds that his current drug possession conviction was not serious or violent [Doc. No. 46 at 2], and that Respondent mischaracterizes the nature of Petitioner's prior offenses. [Doc. No. 46 at 2-4.] Petitioner also claims that Respondent disregards a line of cases decided by the Ninth Circuit since the Supreme Court decision in <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003) and that it is "precisely these post-<u>Andrade</u> cases that delineate the boundary between those sentences that are harsh but constitutionally permissible and those that cross the line to violate clearly established Supreme Court law." [Doc. No. 46 at 3.] According to Petitioner, his case is like those in which habeas relief has been granted by the Ninth Circuit post-<u>Andrade</u> and, therefore, his Eighth Amendment claim should be granted. [<u>Id</u>.]

Petitioner presented his Eighth Amendment claim to the state supreme court in the petition for review. [Lodgement No. 5.] The California Supreme Court summarily denied the petition for review. [Lodgment No. 9.] In <u>Y1st v. Nunnemaker</u>, 501 U.s. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision.  Petitioner presented his Eighth Amendment claim to the appellate court in the same fashion it was presented to the state supreme court. [Lodgment 5 at 8-16; Lodgment 7 at 27-47.] The appellate court denied the claim in a reasoned opinion. [Lodgment 4 – <u>Provencio v. Provencio</u>, No. D045641, slip op (Jan. 5, 2006).]

The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.  The appellate court stated:

> We also conclude Provencio has not shown his sentence is unconstitutionally disproportionate under the United States Constitution.  <u>Solem v. Helm</u> (1983) 463 U.S. 277, <u>Banyard v. Duncan</u> (2004) 342 F.Supp.2d 865, <u>Reyes v. Brown</u> (9th Cir. 2004) 399 F.3d 964, <u>Ramirez v. Castro</u> (9th Cir. 2004) 365 F.3d 755 and other federal cases cited by Provencio do not persuade us to conclude otherwise.  In two recent cases, the United States Supreme Court declined to reverse judgments imposing sentences under California's three strikes law.  (<u>Ewing v. California</u> (2003) 538 U.S. 11 (plur. Opn. Of O'connor, J.); <u>Lockyer v. Andrade</u> (2003) 538 U.S. 63.)  In <u>Ewing</u>, the court rejected the contention that a sentence of 25 years to life imposed under the three strikes law on a defendant convicted of a "wobbler" grand theft offense was cruel and unusual punishment in violation of the Eighth Amendment.  (<u>Ewing</u>, <u>supra</u>, at pp. 30-31 (plur. opn. Of O'Connor, J.).)  Justice O'Connor's plurality opinion stated: "In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism."  (<u>Id</u>.  at p. 29.)  In separate concurring opinions, Justices Scalia and Thomas agreed with the plurality opinion's conclusion that Ewing's sentence under the three strikes law did not violate the Eighth Amendment's prohibition against cruel and unusual punishments.  (<u>Ewing</u>, at pp. 31-32 (conc. opn. of Scalia, J.); <u>Id</u>. at p. 32 (conc. opn. of Thomas, J.))  Because Provencio's instant offense and criminal history is not meaningfully different from the defendant's offense and

criminal history in Ewing, we apply Ewing's reasoning to this case to support our conclusion that Provencio's sentence under the three strikes law does not violate the Eighth Amendment's prohibition against cruel and unusual punishments.

Although the sentence for Provencio's current offense seems to many to be harsh, if not draconian, the courts have basically deferred the issue to the Legislature and, as an intermediate appellate court, we are bound by the jurisprudence of the California Supreme Court and the United States Supreme Court.

[Lodgment 4 at 17-18.]

Recently, in Gonzalez v. Duncan, 551 F.3d 875, 883-891 (9th Cir. 2008), the Ninth Circuit ruled unconstitutional a Three Strikes sentence for failing to update the petitioner's annual sex offender registration within five working days of his birthday, where the petitioner's prior convictions were for cocaine possession, commission of a lewd act on a child under the age of fourteen, attempted rape by force, and second degree robbery.  In doing so, the Ninth Circuit first summarized the relevant U.S. Supreme Court precedent:

The Eighth Amendment mandates that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The final clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Reviewing its Eighth Amendment jurisprudence, the Court has stated that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The " 'precise contours' of [the gross disproportionality principle] 'are unclear,' " and "applicable only in the 'exceedingly rare' and 'extreme' case." Id. at 72-73, 123 S.Ct. 1166 (quoting Harmelin v. Michigan, 501 U.S. 957, 998, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Five Supreme Court decisions supply guidance on how gross disproportionality review operates in practice. . . . .

Finally, in Lockyer v. Andrade, the Court upheld on federal habeas review a Three Strikes sentence of 25 years to life imprisonment for two petty theft convictions arising from the theft of $153.54 worth of videotapes. 538 U.S. 63, 77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The defendant's prior convictions included two counts of misdemeanor theft, at least three counts of residential burglary, and two counts of transportation of marijuana. Id. at 66-67, 123 S.Ct. 1166. Applying AEDPA's deferential standard of review, the Court declared that "[t]he facts here fall in between the facts in Rummel and the facts in Solem[,] ... [a]nd while this case resembles to some degree both Rummel and Solem, it is not materially indistinguishable from either." Id. at 74, 123 S.Ct. 1166. The Court thus held that the California court decision was not contrary to clearly established Supreme Court precedent. Id. Applying the "unreasonable application" clause, the Court first noted the substantial uncertainty among its membership "regarding the application of the proportionality principle to the California three strikes law." Id. at 76, 123 S.Ct. 1166. The majority then reiterated that a sentence for a term of years violated the Eighth Amendment only in an extraordinary case. Id. at 77, 123 S.Ct. 1166. The Court held that Andrade's sentence did not constitute such an extraordinary case and thus that the California Court of Appeal's affirmance of his sentence did not constitute an unreasonable application of clearly established law. Id.

The Supreme Court's Eighth Amendment jurisprudence establishes that "no penalty is per se constitutional," and that " successful challenges to the proportionality of particular sentences [are] exceedingly rare," Helm, 463 U.S. at 289-90, 103 S.Ct. 3001 (quotation marks omitted), and "reserve[d] ... for only the extraordinary case." Andrade,

06cv1760

538 U.S. at 77, 123 S.Ct. 1166. Nevertheless, the Court has stated, as plainly as can be expressed in words, that "one governing principle emerges as 'clearly established' under § 2254(d)(1): A gross proportionality principle is applicable to sentences for terms of years." Andrade, 538 U.S. at 72, 123 S.Ct. 1166.

Although the principle may be "clearly established," the details are not. In Andrade, the Court decried its own "lack of clarity regarding what factors may indicate gross proportionality," id., but declined to clarify the "gross disproportionality" standard, leaving us with a principle, but no explanation. As the Court itself framed the AEDPA standard we must apply here, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear." Id. at 73, 123 S.Ct. 1166. Although the Andrade Court noted that it had in the past largely failed to supply specific content to the gross disproportionality principle, the Court nonetheless did not hesitate to apply it. Id. at 76-77, 123 S.Ct. 1166; see also Ewing v. California, 538 U.S. 11, 28-31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (plurality opinion) (applying the gross disproportionality principle).

Gonzalez, 551 F.3d at 879-883.

The Ninth Circuit then reviewed the cases it has decided post-Andrade:

Following Andrade, we have applied the gross disproportionality principle in a number of cases. In Ramirez v. Castro, for example, Ramirez shoplifted a $199 VCR and was convicted of one count of petty theft with a prior theft-related conviction, an offense punishable as a felony under California law. 365 F.3d 755, 756 (9th Cir.2004). Having been previously convicted of two nonviolent shoplifting offenses, Ramirez was sentenced to 25 years to life imprisonment under California's Three Strikes law. We first found that Ramirez's sentence was "harsh ... beyond any dispute" and not "justified by the gravity of his most recent offense and criminal history." Id. at 767-68. Finding that "this is the extremely rare case that gives rise to an inference of gross disproportionality," we then conducted an intrajurisdictional and interjurisdictional "comparative analysis" of Ramirez's sentence. Id. at 770-73. We concluded that the state court had correctly identified the gross disproportionality principle and that the court's decision was thus not "contrary to" Supreme Court precedent. Id. at 774. However, we held that Ramirez was entitled to habeas relief because the state court had unreasonably applied the gross disproportionality principle to the facts in Ramirez's case. Id. at 774-75.

As Nunes v. Ramirez-Palmer, 485 F.3d 432 (9th Cir.2007), illustrates, however, we have followed the Supreme Court's admonition that successful disproportionality challenges should be rare. In Nunes, the petitioner was sentenced to 25 years to life imprisonment after being convicted of shoplifting $114.40 worth of tools. Id. at 435. Unlike the petitioner in Ramirez, however, Nunes had an "extensive felony record" dating back almost sixty years. Id. at 440. We had little difficulty concluding that Nunes was not entitled to habeas relief. Id. at 443. In other cases, we have similarly denied habeas relief to petitioners where the triggering offense involved a serious crime against life or property and followed a long criminal history. See, e.g., Taylor v. Lewis, 460 F.3d 1093, 1101 (9th Cir.2006) (denying habeas relief to petitioner who received 25 years to life imprisonment for possessing 0.036 grams of cocaine following a "history of recidivism, marked by violence and the intentional taking of human life and spanning some 30 years"); Rios v. Garcia, 390 F.3d 1082, 1083 (9th Cir.2004) (denying habeas relief to petitioner who received sentence of 25 years to life imprisonment for stealing $80 worth of watches from a department store following prior robbery convictions).

Gonzalez, 551 F.3d at 883.

After setting forth the legal precedent, the Ninth Circuit then turned to the issue of whether the crime committed by Gonzalez, when compared to the sentence that was imposed, led to an inference of gross disproportionality. Gonzalez, 551 F.3d at 883 (citations omitted). First, the Ninth Circuit

10

1   "weigh[ed] the crimal offense and the resulting penalty 'in light of the harm caused or threatened to the

2   victim or to society, and the culpability of the offender.'" Id. at 883-84, citing Helm, 463 U.S. at 292.

3   Gonzalez was convicted of violating California Penal Code § 290(a)(1)(D), which requires a registered

4   sex offender to update his registration annually within five working days of his birthday.  The Ninth

5   Circuit found that violation of that subsection did not involve violence nor a threat of violence to any

6   person and that it was a purely regulatory offense.  Gonzalez, 551 F.2d at 884 (citations omitted).  In

7   addition, the Ninth Circuit stated that it was "unable to discern any actual harm resulting from Gonzalez'

8   failure to comply with the annual registration requirement," as the evidence shows that Gonzalez

9   remained at his last registered address and was in fact readily available for surveillance.  Id. at 884

10  (citations omitted).  As a result, the Ninth Circuit found that "[b]ecause a 25-year recidivist sentence

11  imposed solely for failure to provide duplicate registration information is grossly disproportionate to the

12  offense, shocks the conscience of the court and offends notions of human dignity, it constitutes cruel and

13  unusual punishment under both the state and federal Constitutions."  Id. at 885.

14          Nevertheless, the Ninth Circuit then recognized that it "must consider the defendant's criminal

15  history when weighing the severity of the penalty."  Id. at 886, citing Ewing, 538 U.S. at 29 (opinion of

16  O'Connor, J.).  Gonzalez' criminal history was "extensive, including convictions for possession of a

17  controlled substance and auto theft in 1988, attempted forcible rape and lewd conduct with a child under

18  the age of fourteen in 1989, robbery in 1992, and spousal abuse in 1999."  Id.  The court recognized that

19  "Gonzalez' prior convictions, which include both crimes of violence and sexual predation, are very

20  serious," that the state has an interest in deterring recidivism, and that "incarceration for a minimum of

21  28 years would incapacitate Gonzalez and thus prevent him from committing additional felonies against

22  the general population."  Id.

23          However, the Ninth Circuit was "unable to discern any rational relationship between Gonzalez'

24  failure to update his sex offender registration annually and the probability that he will recidivate as a

25  violent criminal or sex offender.  Id. at 887.  The court further stated:

26          Gonzalez's present offense does not reveal any propensity to recidivate. California
            certainly may be "justified in punishing a recidivist more severely than it punishes a first
27          offender," Helm, 463 U.S. at 296, 103 S.Ct. 3001, where " 'the latest crime ... is
            considered to be an aggravated offense because [it is] a repetitive one,' " Witte v. United
28          States, 515 U.S. 389, 400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (quoting Gryger v.
            Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948)). However, what
            California has done here is fundamentally different. It has imposed an extraordinarily

1  harsh sentence on Gonzalez based on a violation of a technical regulatory requirement
   that resulted in no social harm and to which little or no moral culpability attaches. Absent
2  some connection between Gonzalez's past violent and sexual offenses, his present
   regulatory violation, and his propensity to recidivate as a violent or sexual offender, we
3  cannot conclude that California's interest in deterring and incapacitating recidivist
   offenders justifies the severity of the indeterminate life sentence imposed.
4
   In sum, we conclude that Gonzalez's sentence raises an inference of gross
5  disproportionality. We thus turn to a comparative analysis of Gonzalez's sentence. See
   Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring in part and
6  concurring in the judgment); Helm, 463 U.S. at 291-92, 103 S.Ct. 3001; Ramirez, 365
   F.3d at 770.
7  Gonzalez, 551 F.3d at 887.

8        The Ninth Circuit then engaged in a comparison of Gonzalez' sentence with those imposed for

9  other crimes in California and for the same crime in other states.  Gonzalez, 551 F.3d at 887-889.  After

10 doing so, the Ninth Circuit concluded that the comparisons confirmed its finding of gross

11 disproportionality.  Id. [6]

12        As other district courts have noted, under post-Andrade Ninth Circuit precedent, determining

13 whether a Three Strikes sentence violates the Eighth Amendment can be a very fact-specific inquiry

14 resulting in a disparity in the treatment of similarly-situated recidivists:

15        Under post- Andrade Ninth Circuit precedent, the determination of whether the state of
          California legally may impose a Three Strikes sentence on a recidivist who commits a
16        non-violent triggering offense can turn on relatively fine distinctions and the weighing
          and balancing of relatively minor details. Did something in the nature of a struggle
17        precede the recidivist's arrest for the triggering offense? How much more significant is
          the struggle preceding the present arrest than a similar struggle preceding an arrest for a
18        prior offense? Was the weapon involved in a prior armed robbery brandished during the
          robbery, or did the weapon remain hidden in the robber's pocket throughout the robbery?
19        When is a relatively minor triggering felony so minor as to be merely "technical"? How
          significant are the length, the number, and the remoteness of the recidivist's prior
20        incarcerations? The fact that the legality of literally decades of imprisonment can turn on
          such fine distinctions and uncertain balancing inevitably leads to at least two profound
21        problems: an unpredictability in judicial decision making and a disparity in the treatment
          of similarly situated recidivists. The remedy for both of these problems, however, lies not
22        with this Court but with the California state authorities, or with the higher federal courts.
          This Court must continue to apply post- Andrade Ninth Circuit precedent, regardless of
23        the perceived problems that may result from such application. See Zuniga v. United Can
          Co., 812 F.2d 443, 450 (9th Cir.1987) ("[d]istrict courts are, of course, bound by the law
24

25        [6] Having concluded that the sentence on Gonzalez was grossly disproportionate to the technical
   violation he committed, the Ninth Circuit recognized that this was, however, insufficient to grant
26 Gonzalez habeas relief.  Id. at 889.  Rather, Gonzalez would be entitled to habeas relief "only if the state
   court proceedings 'resulted in a decision that was contrary to, or involved an unreasonable application
27 of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id.,
   quoting 28 U.S.C. § 2254(d)(1). The Ninth Circuit concluded that, while the state Court of Appeal had
28 properly stated the objective factors of Solem v. Helm that guide gross disproportionality review, it had
   failed to apply these factors reasonably to the facts of Gonzalez' case. Id. Thus, the Ninth Circuit
   granted Gonzalez' petition for habeas relief. Id. at 891.

06cv1760

of their own circuit").
South v. Hall, 2009 WL 1941599, 11, fn. 7 (C.D. Cal.).[7]

Here, Petitioner's situation does not fit neatly within the parameters of a particular post-Andrade Ninth Circuit decision.  However, when Taylor [8] is read in conjunction with Gonzalez[9], this Court must conclude that Petitioner's case is not the "exceedingly rare"[10] circumstance leading to an Eighth Amendment violation.  First, with respect to the triggering offense, petitioner's situation is certainly distinguishable from Gonzalez.  Here, Petitioner was not convicted of a mere "technical" violation like the one in Gonzalez. Id. at 887. Rather, he was convicted of possession of methamphetamine and unlawful possession of a hypodermic needle [Lodgment 1 at 91-92; Lodgment 2, Vol. 5 at 277-78], after pleading guilty to driving under the influence of a controlled substance and being under the influence of a controlled substance.[ Lodgment 1 at 21-26. ]  The Ninth Circuit has denied habeas relief where a petitioner received a three strikes sentence for possessing 0.036 grams of cocaine.  Taylor v. Lewis, 460 F.3d at 1099.[11]  In Taylor, the Ninth Circuit held that the State of California was entitled to the view that "possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'" Id. at 1099, citing Harmelin, 501 U.S. at 1002 (Kennedy, J., concurring) (citations omitted).  Thus, Petitioner's current conviction, while not violent, was certainly serious.[12]

Moreover, while petitioner's criminal history is less violent than the petitioners in Gonzalez or Taylor, Petitioner's prior convictions for residential burglary were not benign, nondangerous offenses.

[7] The Court may cite unpublished federal judicial opinions issued on or after January 1, 2007. See U.S.Ct.App. 9th Cir. Rule 36-3(b); Fed.R.App. P. 32.1(a).

[8] Taylor v. Lewis, 460 F.3d 1093, 1101 (9th Cir. 2006).

[9] Gonzalez v. Duncan, 551 F.3d 875, 883-891 (9th Cir. 2008).

[10]Harmelin, 501 U.S. at 1001.

[11] Petitioner cites to Banyard v. Duncan, 342 F.Supp.2d 865 (C.D. Cal. 2004) as Ninth Circuit precedent for the proposition that a Three Strikes sentence for possession of single use quantity of drugs violates the Eighth Amendment. [Doc. No. 40 at 8.]  While Banyard did grant habeas relief to a petitioner who had been given a Three Strikes sentence for possession of a single use quantity of rock cocaine, id. at 874-876, it is a district court opinion that was decided before the Ninth Circuit's decision in Taylor.

[12] Adding to the seriousness of the current conviction is the fact that Petitioner was under the influence of methamphetamine and in a motor vehicle at the time of his arrest [Lodgment 1 at 21-26], thus adding to the potential for harm from the possession of methamphetamine.

1    See People v. Cruz, 13 Cal.4th 764, 775 (1996) (designation of residential burglary as a serious felony

2    reflects society's interest in avoiding "the increased danger of personal violence" involved in residential

3    burglary caused by the fact that "a person is more likely to react violently to burglary of his living

4    quarters than to burglary of other places . . . ." (citations and internal quotations omitted)); see also

5    People v. Jackson, 37 Cal.3d 826, 832, (1985), disapproved on other grounds, People v. Guerrero, 44

6    Cal.3d 343, 348, 356, (1988) (residential burglary is "nonviolent criminal conduct which is,

7    nevertheless, so dangerous that its repeated occurrence might . . . call for enhanced punishment

8    equivalent to that imposed upon violent recidivists"); People v. Waldecker, 195 Cal.App.3d 1152, 1157

9    (1987) ("commission of burglary expresses an intent to harm others"). In addition to the residential

10   burglaries, Petitioner was also convicted of two prison priors for unauthorized possession of a controlled

11   substance while in prison. [Lodgment 2, Vol. 2 at 33-37. ] Thus, Petitioner's prior criminal history,

12   while not overtly violent, was serious.

13        Finally, in contrast to Gonzalez, Petitioner's current conviction does bear some rational

14   relationship to his propensity to recidivate.  See Gonzalez, 551 F.3d at 887.  The prison priors were for

15   drug possession [Lodgment 2, Vol. 2 at 33-37], and the residential burglaries were admittedly done, at

16   least in part, to support Petitioner's drug habit [Lodgment 1 at 114-115].  These prior convictions show

17   that Petitioner has a propensity to recidivate, especially when it comes to drug possession, drug use, and

18   crimes to support his drug use.  Thus, Petitioner's current offenses (which occurred approximately three

19   years after his release from prison), coupled with his criminal history, reveal more of a "propensity to

20   recidivate" than in Gonzalez.  See Gonzalez, 551 F.3d at 887.[13]

21        For these reasons, this Court must conclude that, based upon post-Andrade Ninth Circuit

22   precedent, Petitioner's case is not the "extremely rare" case which gives rise to an inference of

23

24

25

26

27

28

---

[13] This Court is not without sympathy to Petitioner's situation.  As noted by the state appellate court, a sentence of 27 years to life for possession of 0.21 grams of methamphetamine does seem "harsh, if not draconian" [Lodgment 4 at 18], especially when Petitioner apparently could have accepted a plea offer of 6 to 8 years [Doc. No. 13-2 at 24]. However, this Court is bound by Ninth Circuit precedent, not sympathy.  When Gonzalez is read in conjunction with Taylor, Petitioner's sentence does not violate the Eighth Amendment.

06cv1760

1  disproportionality.[14]  See Ramirez, 365 F.3d at 770; Gonzalez, 551 F.3d at 879-83.  As a result, the

2  denial of this claim was neither contrary to, nor an unreasonable application of, clearly established

3  Supreme Court law.  Williams, 529 U.S. at 412-13. Accordingly, Petitioner's Eighth Amendment claim

4  is denied in its entirety. See 28 U.S.C. § 2254(d).

5  C.  Petitioner is not entitled to habeas relief on his Sixth Amendment claim.

6          Petitioner argues that his trial counsel functioned ineffectively at his sentencing, in violation of

7  his Sixth Amendment rights. [Doc. No.  13-2 at 37-43; Doc. No. 40 at 10-19.] In particular, Petitioner

8  claims that his trial counsel failed to investigate and present mitigating evidence at his sentencing.  This

9  conduct by trial counsel, according to Petitioner, fell below an objective standard of reasonableness and

10 caused prejudice to Petitioner. [Id.] As a result, Petitioner argues, the state court's denial of Petitioner's

11 current Sixth Amendment claim was both contrary to controlling Supreme Court precedent and involved

12 an objectively unreasonable application of federal law. [Doc. No. 40 at 10.]

13         Respondent argues that Petitioner's current Sixth Amendment claim fails because there is not

14 established Supreme Court authority establishing the standard for ineffective assistance of counsel

15 claims in non-capital case sentencing proceedings, citing to Davis v. Grigas, 443 F.3d 1155, 1158 (9th

16 Cir. 2006).  Therefore, Respondent argues, the state court's rejection of Petitioner's current Sixth

17 Amendment claim was neither contrary to, nor involved an unreasonable application of, clearly

18 established federal law, as determined by the United States Supreme Court. [Doc. No. 44-2 at 25.]

19         In the Traverse, Petitioner denies that there is not established Supreme Court authority regarding

20 ineffective assistance of counsel claims in non-capital settings, and reiterates that the conduct of

21 Petitioner's trial counsel fell below an objective standard of reasonableness. [Doc. No. 46 at 7-8.]

22         Petitioner presented his current Sixth Amendment claim to the state supreme court in the petition

23 for review. [Lodgement 17.] The California Supreme Court summarily denied the petition for review.

24 [Lodgment 18 .] In Y1st v. Nunnemaker, 501 U.s. 797, 804 (1991), the Court adopted a presumption

25 which gives no effect to unexplained state court orders but "looks through" them to the last reasoned

26 state court decision.  Petitioner presented his current Sixth Amendment claim to the appellate court in

27

28          [14]The Court need not, therefore, engage in an intra –and interjurisdictional comparison of
Petitioner's sentence as the "threshold question" of an inference of gross disproportionality" has not
been met.  See Harmelin v. Michigan, 501 U.S. 957, 1005 (1991).

the same fashion it was presented to the state supreme court. [Lodgment 15 at 25-36; Lodgment 17 at 16-25.] The appellate court denied the claim in a reasoned opinion. [Lodgment 16 – In re Angel Provencio on Habeas Corpus, No. D052593, slip op (June 30, 2008).]

The Court will therefore look through the silent denial by the state supreme court to the appellate court opinion.  The appellate court stated:

> The petition for writ of habeas corpus has been read and considered by Justices Benke, McIntyre and Aaron.  We take judicial notice of petitioner's direct appeal No. D045641.
> A jury convicted petitioner of possession of methamphetamine and unauthorized possession of a hypodermic needle. The court sentenced petitioner to state prison for a term of 25 years to life for possession of methamphetamine under the three strikes law and to two consecutive, one-year enhancements for his prison prior convictions, for an aggregate term of 27 years to life. We affirmed the judgment in No. D045641.
> Petitioner filed a habeas corpus petition in the trial court contending that his trial counsel was ineffective for failing to highlight mitigating facts in petitioner's motion to strike his three-strikes priors or at the sentencing hearing.  The court denied the petition on August 8, 2007.
> Petitioner filed the instant petition raising the same contention that he raised in the trial court.  In particular, petitioner claims trial counsel should have highlighted the following about himself: his history of physical abuse by his parents which caused him to run away; his homelessness, including times when he sought refuge in tunnels along the Mexican-American border; school absences and academic dificiencies; the motives underlying his prior strike offenses, which included the need to provide for his young son; his ability, upon his last release from prison in 2000, to assume the primary role in caring for his newborn, premature son, while also maintaining two jobs to support his family; his life stresses such as health problems of his prematurely born son and ill wife, demands of working long hours to support his family, and his failed second marriage.  Petitioner contends that if his counsel had presented this information to the sentencing judge, the judge would have struck his strike priors and petitioner would have received a lesser sentence.
> We adopt the reasoning in the trial court's August 8, 2007, order denying habeas relief.  The petition does not state facts and contain evidence to show that counsel's performance as deficient, and that the deficiencies prejudiced the result.  (Strickland v. Washington (1984) 466 U.S. 668, 687; In re Smith (1970) 3 Cal.3d 192, 202).
> The petition is denied.

[Lodgment 16.]

The trial court's opinion regarding Petitioner's current Sixth Amendment claim, to which the appellate court refers, states in pertinent part as follows:

> . . .
> After reviewing of the case file, the Petition, and the informal response thereto, the court finds that Petitioner fails to make a prima facie showing that trial defense counsel's [sic] fell below objective standards of reasonableness.  The "Request for Court to Dismiss Prior Conviction Alleged Under '3-strikes' Law," ("Request") with the attached "Forensic Psychological Examination & Pre-sentence Evaluation," ("Evaluation") was a reasonable effort toward providing the court sufficient information regarding Petitioner's character and background.
> Even if counsel's performance fell below objective levels of reasonableness, the court finds that the Petition fails to make a prima facie showing of prejudice.  Given Petitioner's lengthy and unabated criminal history, the court does not find it reasonably

16

1    probable that the sentencing court would have reduced Petitioner's sentence had the judge
2    factored in Petitioner's alleged homelessness, abuse, and financial support to his family.
     [Footnote omitted.]  Similarly, the court finds it unlikely the sentence would have been
3    reduced had the court been aware of Petitioner's assertion that at the time of his arrest he
     was attempting to save a step-daughter from an alleged child molester.
4            Finally, the court does not find that trial defense counsel was ineffective for
     failing to seek clarification or correct the court's comment that Petitioner had taken "no
5    positive action" to address his drug addictions.  The Request and Evaluation submitted by
     trial defense counsel clearly indicated that Petitioner made two attempts at drug
6    rehabilitation.  It may technically have been more correct for the sentencing judge to
     indicate that Petitioner had made positive but ineffective efforts at drug rehabilitation.  In
7    any event, with respect to this comment the court does not finds [sic] that trial defense
     counsel's performance fell below objective levels of reasonableness or that Petitioner
     suffered prejudice.
8            For the reasons stated, the Petition fails to make a prima facie showing that trial
     defense counsel provided ineffective assistance.  The Petition is therefore denied.
9    [Lodgment 14 at 4-5.]

10       Petitioner argues that he has an ineffective assistance of counsel claim under <u>Strickland v.</u>

11   <u>Washington</u>, 466 U.S. 668, 685 (1984). [Doc. No. 13-2 at 37-43; Doc. No. 40 at 10-19.]  This Court

12   rejects Petitioner's argument at the outset because the Ninth Circuit has explicitly held that there is no

13   clearly established United States Supreme Court precedent governing ineffective assistance of counsel

14   claims in the noncapital sentencing context. See <u>Davis v. Grigas</u>, 443 F.3d 1155, 1158 (9th Cir.2006);

15   <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1244-45 (9th Cir.2005).  As the Ninth Circuit previously

16   recognized, the <u>Strickland</u> Court "expressly declined to 'consider the role of counsel in an ordinary

17   sentencing, which . . . may require a different approach to the definition of constitutionally effective

18   assistance.' " <u>Cooper-Smith</u>, 397 F.3d at 1244 (quoting <u>Strickland</u>, 466 U.S. at 686).   Moreover, since

19   <u>Strickland</u>, the Supreme Court has not delineated a standard which should apply to ineffective assistance

20   of counsel claims in noncapital sentencing cases.  <u>Id</u>.  <u>See Davis</u>, 443 F.3d at 1158. Because there is no

21   clearly established Supreme Court precedent that applies, there is no habeas relief available under

22   AEDPA to Petitioner for this claim.  "If no Supreme Court precedent creates clearly established federal

23   law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot

24   be contrary to or an unreasonable application of clearly established federal law." <u>Brewer v. Hall</u>, 378

25   F.3d 952, 955 (9th Cir.2004). Thus, because Petitioner's claim of ineffective assistance of counsel at

26   sentencing rests on an unsettled legal proposition, <u>see Grigas</u>, 443 F.3d at 1158-59, the state court's

27   resolution of such a claim cannot be considered to be contrary to, or an unreasonable application of,

28   Supreme Court authority.  <u>See id</u>.; <u>see also</u> 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 409-13; <u>Carey v.</u>

1  Musladin, 549 U.S. 70, 127 S.Ct. 649, 653-54 (2006).[15]   Therefore, Petitioner presents no basis for

2  federal habeas relief on this claim.

3      Moreover, even assuming *arguendo* that application of the Strickland standard was called for

4  with respect to trial counsel's performance at sentencing, Petitioner's allegations are factually and legally

5  inadequate to establish deficient performance or prejudice within the meaning of Strickland.  Under

6  Strickland, Petitioner must first establish that counsel's performance was deficient, i.e., that it fell below

7  an "objective standard of reasonableness" under prevailing professional norms, in order to prevail on his

8  ineffectiveness claim. Strickland v. Washington, 466 U.S. at 687-88. Judicial scrutiny of counsel's

9  performance must be highly deferential, and a court must indulge a strong presumption that counsel's

10 conduct falls within the wide range of reasonable professional assistance. See id. at 689. Second,

11 Petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a

12 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

13 have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine

14 confidence in the outcome. See id.

15     Petitioner claims that his trial counsel failed to investigate and present mitigating evidence at his

16 sentencing.  Specifically, Petitioner claims that his trial counsel failed to research and present "the

17 particulars of his background, character, and prospects" at his sentencing. [Doc. No. 13-2 at 40 (citations

18 omitted).] Had trial counsel done so, Petitioner argues, then there is a reasonable probability that the

19 sentencing judge would have found Petitioner to be "outside the spirit of the Three Strikes law," and

20 would have removed Petitioner's prior "strikes" from consideration. [Doc. No. 13-2 at 42 (citations

21 omitted).] Without the enhancements from his prior convictions, argues Petitioner, he would have

22 received, at most a three-year sentence for his possession of methamphetamine. [Doc. No. 13-2 at 42

23 (citations omitted).]

24     The specific information Petitioner claims should have been presented with regard to his

25 background is as follows:

26     (1)  Petitioner ran away from home when he was young to escape his parents' abuse [Doc.

27

28     [15]Because of the lack of "clearly established" Supreme Court precedent in this context, state
   courts are "free" to "establish what constitutes ineffective assistance of counsel at sentencing."  See
   Davis, 443 F.3d at 1158.  In this case, the California Court of Appeal, in rejecting Petitioner's claim,
   cited to Strickland. [Lodgment 16.]

No. 13-5 at 2; Doc. No. 13-6 at 2];

(2) Petitioner had a child when he was only 18 years old; and his prior criminal history of burglaries were in large part motivated by his desire to provide for his child and the child's mother [Doc. No. 13-5 at 3; Doc. No. 13-7 at 2].

[Doc. No. 13-2 at 40.]

The specific information Petitioner claims should have been presented with regard to his character is as follows:

(3) Petitioner found work as a cook only days following his release from prison in 2000. [Doc. No. 13-5 at 4; Doc. No. 13-10 at 1];

(4) In order to support his wife and newly born, premature baby, Petitioner worked long hours, in addition to taking care of cleaning, gardening, feeding and shopping. [Doc. No. 13-10 at 1];

(5) Petitioner sought help for his substance abuse problems while maintaining a full-time work schedule [Doc. No. 13-5 at 4; Doc. No. 13-10 at 2];

(6) Petitioner provided his family with financial assistance and even helped to keep the lights on at his mother's home [Doc. No. 13-5 at 4];

(7) Petitioner had a very positive impact on the lives of his nieces and nephews. [Doc. No. 13-6 at 2; Doc. No. 13-7 at 3].

[Doc. No. 13-2 at 40-41.]

The specific information Petitioner claims should have been presented with regard to his prospects is as follows:

(8) Following his release from prison in 2000, Petitioner worked multiple jobs as a cook. [Doc.No. 13-5 at 4];

(9) Petitioner learned valuable skills on the job [Doc. No. 13-6 at 2];

(10) When Petitioner moved back to Southern California in 2003, he quickly found work as a plumber and completed a plumber's certification course. [Doc. No. 13-7 at 2];

(11) He purchased a car in his own name and began saving some of his salary [Doc. No. 13-6 at 2].

[Doc. No. 13-2 at 41.]

Here, Petitioner's trial counsel filed a Request for Court to Dismiss Conviction Alleged Under "3-Strikes Law" in the Furtherance of Justice Pursuant to Penal Code § 1385 (hereinafter the "Sentencing Motion") [Lodgment 1 at 106 - 118.] In the Sentencing Motion, trial counsel requested that the court dismiss the prior convictions alleged against Petitioner, and gave fourteen specific reasons:

(1) The prior convictions are remote in time;

(2) The prior convictions were not violent;

(3) The defendant's criminal history displays a lack of violence;

(4) The current offense is also punishable as a misdemeanor but is being punished as a felony;

(5) The current offense is relatively minor;

(6) The current offense is not a serious or violent felony;

(7) The punishment under the three strikes law is disproportionate to the severity of the current offense;

(8) The punishment under the three strikes law is disproportionate to the defendant's criminal history;

(9) The defendant's criminal history is not long;

(10) The defendant's criminal history is a result of the defendant's addiction to controlled

1   substances;
(11) The defendant has demonstrated an ability to conduct himself as a law abiding
2   citizen for long periods of time;
(12) The defendant is not deemed to be a danger to persons;
3   (13) The defendant demonstrates a willingness and ability to rehabilitate himself;
(14) The amount of drugs possessed was small.
4   [Lodgment 1 at 108-110.]

5        In addition, trial counsel attached a Forensic Psychological Examination Pre-Sentence

6   Evaluation, conducted by Gregg A. Michel, Ph.D. on August 7, 2004 (hereinafter the "Pre-Sentence

7   Evaluation"). [Lodgment 1 at 112-118.] In the Pre-Sentence Evaluation, Dr. Michel provided a review of

8   records with regard to Petitioner's current and past offenses, as well as his probation reports. [Lodgment

9   1 at 114-115. ] With regard to the past residential burglary convictions, Dr. Michel states the following:

10       A review of the 04/01/88 San Diego County Probation Officer's Report Indicated
Mr. Provencio had been convicted of two counts of burglary of inhabited
11   building/residence, in violation of PC 459. These offenses were from 11/20/87 and
11/25/87 and involved the defendant and a co-defendant burglarizing a residence. He
12   was also involved in another such incident, but denied committing these offenses stating,
"I was found guilty of something I did not do." There is nothing in the record to indicate
13   there was any actual violence associated with these crimes.
       A review of the 07/02/92 San Diego County Probation Officer's Report, in Case
14   #CR130879, indicated Mr. Provencio was convicted of first-degree burglary in violation
of PC 459 due to an incident from 04/03/92. He was observed with another individual
15   (juvenile) and both individuals were carrying luggage in each hand that contained stolen
property. He later indicated the co-defendant crawled into the residence and then let the
16   defendant in through the front door. He stated he had been heavily addicted to
methamphetamine at the time and admitted using heroin and marijuana, as well as
17   alcohol. He indicated he participated in that burglary in order to support his drug habit.
There was no physical violence associated with that offense.
18   [Lodgment 1 at 114-115.]

19       Dr. Michel then discussed Petitioner's history and behavioral observations:

20       Mr. Provencio is 36 years of age. He indicated he was staying with his sister at
the time of his most recent arrest. He indicated he had been released from a period of
21   incarceration on 12/05/03; the Instant Offense occurred on 12/13/03. He reported he
bailed out of jail the end of January 2004 and was re-arrested with regard to resisting
22   charges. He described having spent most of his adult life and a great deal of his time as a
juvenile being incarcerated.
23       Mr. Provencio stated he was married at age 21 and separated/divorced at age 23.
He stated his second marriage was at age 32, having been married in prison with
24   separation/divorce when he as 34 years old. He indicated he has two children, ages 4 and
19, whom he does not see. He reported he is originally from San Diego, but had lived in
25   San Jose, CA, for approximately two years.
       When asked about his employment history, he stated his brother had hired him as
26   a plumbing assistant with D&G Plumbing and he was employed in this capacity at the
time of his arrest. He stated that in the past he has worked for the Double Tree Hotel
27   doing banquet preparation for a two-year period of time and as a cook at the Radisson
Hotel and at Zahir Café and Catering.
28       Mr. Provencio was questioned regarding his earlier personal history and stated he
was raised by his parents with two brothers and two sisters. He stated one of his brothers
is doing a double life term. He indicated his father worked for Rohr Corporation as a

06cv1760

router operator and his mother also worked at the same company. He described having developed behavior related to oppositional conduct disorder during his teenage years. He stated he first used heroin at age 15 and when free in the community has had significant difficulties with substance abuse/dependence. He became involved in gang activities at age 15. He incurred a juvenile arrest record and was incarcerated on three different occasions at the Campo Facility that included charges for hit-and-run and drug/alcohol charges.

When questioned regarding his plans of the future, Mr. Provencio stated he wanted to "get help in prison, then when I get out." He stated he needed help for his drug problems and needed to go back to work. He also indicated he had recently become involved in another relationship.

[Lodgment 1 at 115.]

Dr. Michel reviewed Petitioner's alcohol and drug history [Lodgment 1 at 116], and also discussed Petitioner's attempts at rehabilitation:

The defendant indicated that when living in San Jose approximately four years ago he had been involved in an inpatient treatment program at Pathways. He stated he had left after two or three months, citing a conflict/argument when his wife visited him. He also stated he was involved in a Heaven's Gate Program as an outpatient for five or six months. He denied any more recent treatment.

[Lodgment 1 at 117.]

Dr. Michel then provided a summary and recommendations:

Mr. Provencio described being heavily influenced as a child by his older brother, who had significant legal difficulties. He developed oppositional behavior and later violated age-appropriate norms consistent with conduct disorder that after age 18 developed into antisocial personality disorder. He has failed to conform to social norms with respect to maintaining lawful behavior and has engaged in behavior in which the rights of others have been violated. He has poor judgment and is quite impulsive without appropriate consideration for the possible consequences of his actions. He does not learn well from past negative experience. He does not, however, present with personality characteristics associated with engaging in predatory type or actively-based violent behavior. He obviously places himself and others at risk with regard to past behavior involved with committing residential burglaries.

Mr. Provencio does not present with features of actual institutionalization and appears to be more affected by lack of socialization in an individual who is relatively disfranchised on a societal basis due to his choices and behavior. He has long-term problems with drug abuse with brief periods of dependence as noted above. These difficulties add to his longer-term adjustment problems. Additionally, he has an extensive history of reoffending.

Mr. Provencio is capable of adhering to eventual terms of parole. When he is again free in the community he should be required to undergo an inpatient drug rehabilitation program of several months' duration such as the Freedom Ranch or a similar program, followed by extensive aftercare including continued drug education with individual and group counseling. This would allow him to address socialization issues and the other problems noted above in terms of his negative long-term pattern of adjustment. He could be maintained in the community without representing a physical threat or dangers to others.

[Lodgment 1 at 117-118.]

Thus, through Dr. Michel's report, Petitioner's trial counsel did submit a considerable amount of evidence regarding Petitioner's background, character and prospects, including information regarding his

21

1   troubled childhood, problems with drug addiction, previous marriages and children, and previous

2   employment.  The fact that the evidence is not exactly what Petitioner now argues should have been

3   presented does not mean that trial counsel's performance was unreasonable.  See Strickland at 688.[16]

4   The relevant inquiry is not what defense counsel could have presented, but rather whether the choices

5   made by defense counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.

6   1998).  Here, trial counsel made a reasonable attempt to show the sentencing court that Petitioner's prior

7   criminal history was non-violent and fairly remote in time, that Petitioner's current offense was non-

8   violent, and that the appropriate sentence for Petitioner was one where he could be freed on parole and

9   undergo inpatient drug rehabilitation, followed by individual and group counseling to address drug-

10  addiction and socialization problems that have persisted since his youth. Thus, trial counsel's choices

11  were reasonable, and Petitioner has failed to meet the first prong of the Strickland test.

12      Further, Petitioner cannot satisfy the prejudice prong of the Strickland test.  "[A] court making

13  the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached

14  would reasonably likely have been different absent the errors."  Strickland, 466 U.S. at 696.  Although a

15  trial judge has discretion to strike or vacate a pled and proved prior strike conviction, that discretion is

16  confined to situations where the defendant "may be deemed outside the scheme's spirit."  See People v.

17  Williams, 17 Cal.4th 148, 161 (1998).

18      Here, the sentencing judge took into consideration a ten-page probation report, the Sentencing

19  Motion, the Pre-Sentence Evaluation, and letters from the Petitioner's family. [Lodgment 2, Vol. 6 at

20  600.] The sentencing judge therefore had information relating to Petitioner's difficult childhood, his past

21  drug dependence, the nature of his past crimes, his efforts at drug rehabilitation, and his previous

22  employment.  Yet the sentencing judge chose not to strike the priors because "the criminal conduct of

23  the [Petitioner] basically has gone unabated for 20 years." [Lodgment 2, Vol. 6 at 607.] As the

24  sentencing judge noted, it is exactly this type of recidivist behavior which is at the heart of the enhanced

25  sentences under the Three Strikes law. [Id.] While the information Petitioner now claims should have

26

27      [16]As noted by respondent in the underlying state habeas petition proceedings [Lodgment 11 at 10-
    11], some of the information Petitioner now claims should have been presented is contrary to the
28  information Petitioner gave to Dr. Michel.  For example, Petitioner told Dr. Michel that he participated
    in the April 1992 residential burglary in order to support his drug habit [Lodgment 1 at 114, 115],
    whereas now he says it was to provide for his child and child's mother [Doc. No. 13-5 at 3; Doc. No. 13-
    7 at 2].

been presented may speak to some of Petitioner's positive qualities, it does nothing to change the fact that Petitioner did engage in the previous crimes.  And the sentencing judge was quite clear that it was was the repetitive nature of the criminal conduct, and Petitioner's apparent inability to conform his conduct to the requirements of the law, that caused the court to deny the motion to strike the prior strikes. [Lodgment 2, Vol. 6 at 608.] Therefore, Petitioner has failed to show the prejudice prong of the Strickland test.

Accordingly, for all the reasons set forth above, Petitioner does not establish that he received ineffective of counsel at trial, and Petitioner's Sixth Amendment claim is denied in its entirety. See 28 U.S.C. § 2254(d).

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the First Amended Petition.

**IT IS ORDERED** that no later than **November 13, 2009**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 30, 2009.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objection on appeal of this Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  October 9, 2009

_____

**CATHY ANN BENCIVENGO**
United States Magistrate Judge

06cv1760