1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   ANGEL PROVENCIO,                    )   Civil No. 06cv1760-L(CAB)
                                         )
12               Petitioner,             )   **ORDER ADOPTING AMENDED
                                         )   REPORT AND
13   v.                                  )   RECOMMENDATION;
                                         )   OVERRULING OBJECTIONS;
14   CHRIS CHRONES,                      )   DENYING PETITION; and
                                         )   DENYING CERTIFICATE OF
15                                       )   APPEALABILITY**
                 Respondent.             )
16   _____ )

17        Petitioner Angel Provencio, a state prisoner who is represented by counsel, filed a petition

18   for a writ of habeas corpus under 28 U.S.C. § 2254 that was subsequently amended. The case

19   was referred to United States Magistrate Judge Cathy Ann Bencivengo for a report and

20   recommendation ("Report") pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(d).

21   The magistrate judge issued an amended Report recommending denial of the second amended

22   petition. Petitioner then filed objections to the amended Report, requested and was granted oral

23   argument.

24        Having fully reviewed the matters presented including oral argument, petitioner's

25   objections are **OVERRULED**, the Report and Recommendation is **ADOPTED**, and the Petition

26   is **DENIED**.

27   / / /

28   / / /

06cv1760

1  **Discussion**

2      **1.     Standard of Review**

3          **a.     Report and Recommendation**

4       In reviewing a magistrate judge's report and recommendation, the district court "shall

5  make a *de novo* determination of those portions of the report . . . to which objection is made,"

6  and "may accept, reject, or modify, in whole or in part, the findings or recommendations made

7  by the magistrate judge." 28 U.S.C. § 636(b)(1). Under this statute, "the district judge must

8  review the magistrate judge's findings and recommendations *de novo if objection is made, but*

9  *not otherwise." United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*)

10 (emphasis in original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz.

11 2003) (applying *Reyna-Tapia* to habeas review). Because petitioner filed objections to the

12 entirety of the amended Report, the Court conducts a *de novo* review.

13         **b.     Writ of Habeas Corpus**

14      A federal court is bound by federal statute to affirm a state court judgment unless the

15 decision "was contrary to, or an unreasonable application of, clearly established Federal law, as

16 determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

17 "Clearly-established" law consists of the holdings not the dicta of the Supreme Court. *Williams*

18 *v. Taylor*, 529 U.S. 362, 412 (2000).

19      The Supreme court has noted that the "contrary to" and "unreasonable application"

20 clauses have distinct meanings. *Williams*, 529 U.S. at 405. A "state-court decision can be

21 'contrary to' th[e] Court's clearly established precedent . . . if the state court arrives at a

22 conclusion opposite to that reached by th[e] Court on a question of law." *Id.* A state-court

23 decision would also be contrary to the "Court's clearly established precedent if the state court

24 confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and

25 nevertheless arrives at a result different from[that] precedent." *Id.* at 406.

26      Further, a federal court must affirm the state court decision unless it "resulted in a

27 decision that was based on an unreasonable determination of the facts in light of the evidence

28 presented in the State Court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63

06cv1760

1  (2003). The state court's factual findings are presumed correct if not rebutted with clear and

2  convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir.

3  2004). It is petitioner's burden to show the state court's decision was either contrary to or an

4  unreasonable application of federal law. *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002). "A

5  federal habeas court may not issue the writ simply because that court concludes in its

6  independent judgment that the relevant state court decision applied clearly established federal

7  law erroneously or incorrectly." *Lockyer*, 123 S. Ct. at 1175 (citations omitted). "Rather, that

8  application must be objectively unreasonable." *Id.* (citations omitted). In regard to the

9  "unreasonable application" prong, the Court specified that "[a] state-court decision that correctly

10  identifies the governing legal rule but applies it unreasonably to the facts of a particular

11  prisoner's case certainly would qualify as a decision 'involv[ing] an unreasonable application of

12  ... clearly established Federal law.' " *Williams*, 120 S. Ct. 1495 (alteration in original). The

13  "'unreasonable application' clause requires the state-court decision to be more than incorrect or

14  erroneous." *Lockyer*, 538 U.S. at 75; *Williams*, 529 U.S. at 410.

15      Both the Supreme Court and the Ninth Circuit Court of Appeals have recently explained

16  that a habeas petition must be reviewed through the deferential lens of the Antiterrorism and

17  Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. In *Sessoms v. Runnels*,

18  Ninth Circuit noted that even if some claims raise a close question as to how the habeas court

19  may have ruled were it was reviewing a conviction without AEDPA deference, the petitioner

20  must "'show that the state court's ruling on the claim being presented in federal court was so

21  lacking in justification that there was an error well understood and comprehended in existing law

22  beyond any possibility for fairminded disagreement.'" *Sessoms*, 650 F.3d 1276, 1277-78 (9th

23  Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

24      **2.      Procedural Background**[1]

25      In a four-count Information filed in the San Diego County Superior Court on December

26  31, 2003, Petitioner was charged with possession of 0.21 grams of methamphetamine in

27  

28      [1] Because petitioner has no objection to either the procedural or factual background
    contained in the amended Report, those sections have been reproduced here.

1  violation of Cal. Health and Safety Code section 11377(a) (felony) (count 1), driving under the

2  influence of a controlled substance in violation of Cal. Vehicle Code section 23152(a)

3  (misdemeanor) (count 2), being under the influence of a controlled substance in violation of Cal.

4  Health and Safety Code section 11550(a) (misdemeanor) (count 3), and unauthorized possession

5  of a hypodermic needle in violation of Cal. Business and Professions code section 4140

6  (misdemeanor) (count 4). [Lodgment 1 at 1-5.] It was also alleged that Petitioner had previously

7  been convicted of three felonies, making him eligible for sentencing under California's Three

8  Strikes Law (Cal. Penal Code sections 667(b) thru (i) and 1170.12). Finally, the information

9  alleged that Petitioner had been convicted of two in-prison offenses for possession of a

10  controlled substance. [Lodgment 1 at 3, 4.]

11      On April 20, 2004, Petitioner pled guilty to count 2 (driving under the influence of a

12  controlled substance) and count 3 (being under the influence of a controlled substance).

13  [Lodgment 1 at 21-26] Petitioner also waived his right to a jury trial on the alleged sentence

14  enhancements and admitted three prior "strike" offenses within the meaning of Cal. Penal Code

15  section 667(d)(1) and two in-prison drug offenses. [Lodgment 2, Vol. 2 at 33-37.]

16      On May 23, 2003, a jury found Petitioner guilty of count 1 (possession of

17  methamphetamine) and count 4 (unauthorized possession of a hypodermic needle). [Lodgment 1

18  at 91-92, 150; Lodgment 2, Vol. 5 at 277-78.]

19      On December 9, 2004, Petitioner appeared before the state trial court for a probation

20  hearing and sentencing. [Lodgment 1 at 159; Lodgment 2 at 600-610.] First, the trial court (Hon.

21  Raymond Edwards, Jr.), addressed the Petitioner's motion to dismiss prior convictions alleged

22  under three strikes law in furtherance of justice pursuant to Cal. Penal Code section 1385. The

23  Court denied Petitioner's motion and, after reviewing the pertinent case law, stated as follows:

24      So it is in light of these cases that the court examines the request by
counsel to exercise leniency and strike the strikes pursuant to 1385. As Mr.

25      Provencio has here noted, he spent some 15 years in prison. The matter
which brings him before the court sets out that he has in the case before the

26      court SCS180860, two prison priors. So prison has not had the desired
effect, which is convincing the defendant to conform his behavior to the

27      requirements of the law.
        Counsel and the defendant here today say that defendant has a

28      sickness, which is his chemical dependency. This is something that the

4                                                    06cv1760

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

defendant has known for the period of time that he has been involved with the taking of drugs. Yet, no positive action has been taken to deal with this issue. And the record before the court, if you look at the probation officer's report, beginning at page 3 where it lays out the defendant's criminal history at page 4, 5 and 6, the criminal conduct of the defendant basically has gone unabated for 20 years. And because of this 20-year history – as the court pointed out in 1980, these recidivist statutes, which is the three strikes law, have harsher sentences because they deal with people who by repeated criminal acts have shown that they are incapable of conforming to the norms of society.

And Mr. Provencio, in looking at this history and the efforts at rehabilitation that have been made in the past – you were a ward of the court, and there were, through the 1980's, efforts to deal with you in the juvenile justice system. In the late 80's, you came into the adult court, and after being in adult court, efforts were made at probation, and probation having not been successful. And then the continued criminal activity, including the first degree burglary, led to a prison commitment. And the fact that these prison commitments, following this long effort at local rehabilitation, have failed, still has not had the desired effect.

So in light of the nature of the offense, which is the repetitive nature of your criminal conduct – although the particular offense is not, by any stretch of the imagination, the most serious of offenses that we see coming before the court, it is the inability to conform your conduct to the requirements of the law that causes the court to deny the motion to strike the strikes pursuant to 1385. So that motion is denied for the reasons stated, based upon the citations cited.

[Lodgment 2, Vol. 6 at 606-608.]

The trial judge then sentenced Petitioner to a term of twenty-five years to life for count one (possession of methamphetamine), plus an additional two years for the two prison priors. [Lodgment 1 at 159; Lodgment 2, Vol. 6 at 608-610.] On the remaining counts, the court sentenced Petitioner to 180 days to be served concurrently with his punishment under Count 1 and also gave him credit for time served. [Id.]

Petitioner filed a direct appeal, contending that his sentence of twenty-five years to life was cruel and unusual punishment, in violation of the United States and California Constitutions. [Lodgment 7 at 27-47.] Petitioner also argued that his Sixth and Fourteenth Amendment right to effective assistance of counsel had been violated because: his trial counsel failed to object to unqualified witness testimony regarding the lack of fingerprinting that usurped the jury's fact-finding role on the question of appellant's guilt or innocence; allowed the witness to bolster his own testimony; and failed to obtain essential evidence that deprived appellant of a crucial aspect

06cv1760

1   of his defense (hereinafter the "previous" Sixth Amendment claim). [Lodgment 7 at 4-26.]² On

2   January 5, 2006, the California appellate court rejected his appeal. [Lodgment 4 – People v.

3   Provencio, No. D045641, slip op. (Jan. 5, 2006).] On February 6, 2006, Petitioner filed a Petition

4   for Review with the California Supreme Court. [Lodgment 5]. On March 15, 2006, the

5   California Supreme Court summarily denied Petitioner's petition for review. [Lodgment 9.]

6          On April 24, 2007, Petitioner filed a Petition for Writ of Habeas Corpus containing

7   Petitioner's current Sixth Amendment claim to the San Diego County Superior Court. [Doc. No.

8   10.] On August 8, 2007, the Superior Court denied the petition. [Lodgment 14.] On February 28,

9   2008, Petitioner filed a Petition for Writ of Habeas Corpus containing Petitioner's current Sixth

10  Amendment claim in the California Court of Appeal. [Lodgment 15.] On June 30, 2008, the

11  Court of Appeal denied the petition. [Lodgment 16.] On July 18, 2008, Petitioner filed a Petition

12  for Writ of Habeas Corpus containing Petitioner's current Sixth Amendment claim in the

13  California Supreme Court. [Lodgment 17.] On February 18, 2009, the California Supreme Court

14  denied Petitioner's state habeas corpus petition. [Doc. No. 40; Lodgment 18.]

15         **3.      Factual Background**

16         This Court gives deference to state court findings of fact and presumes them to be correct.

17  *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings

18  of historical fact, including inferences properly drawn from these facts, are entitled to statutory

19  presumption of correctness). Petitioner does not object to the statement of facts provided in the

20  Report that is taken from the California Court of Appeals' decision. The facts are reproduce

21  here.

22          At about 12:55 a.m. on December 13, 2003, Chula Vista Police Officer
    Randy Smith made a traffic stop of a blue Honda Civic that had made an unlawful
23  lane change and U-turn. Provencio, its driver, leaned his head out of the window,
    looked back at Smith, and then stopped the car. Provencio was fidgety. There were
24  no other persons in the car.
            Smith saw Provencio's right hand repeatedly move down toward the center
25  console. Although Smith directed him to place his hands on the steering wheel,
    Provencio continued to move his right hand down toward the console. Smith asked
26  for Provencio's license and car registration and directed him to get out of the car.

27  _____

28       ² Petitioner is not pursuing the previous Sixth Amendment claim in this federal habeas
    petition. See Doc. No. 46 at 3.

1   Smith searched Provencio's pockets and found a small cap that fits over the
    plunger part of a hypodermic syringe. Smith searched the car and found the plastic
2   gearshift and parking brake housing was loose and missing some screws.[3] Smith
    pulled from the plastic housing several items, including a plastic bag, a plastic tube
3   with red caps on both ends, and a hypodermic syringe. The plastic cap Smith found
    in Provencio's pants pocket fit the syringe found in the car. Smith examined
4   Provencio's arms, which had old and fresh injection marks.[4]
         Inside the plastic bag was a baggie containing a white, crystalline
5   substance.[5] Smith performed a "DRE" evaluation of Provencio. Provencio was
    fidgety and hyperactive, and had dilated pupils. His pupils reacted slowly to light.
6   Even after being seated for 15 minutes, his pulse rate was an abnormally high 120
    beats per minute.
7        At the police station, Smith continued his examination of Provencio, asking
    him questions, measuring his pulse and blood pressure, conducting a field
8   coordination test, and measuring his pupils in different lighting conditions. Smith
    formed the opinion Provencio was under the influence of a controlled substance,
9   possibly a nervous system stimulant. A test of Provencio's urine sample measured
    102,691 nanograms of methamphetamine.
10       An information charged Provencio with possession of methamphetamine
    (Health & Saf. Code, § 11377, subd.(a)), driving under the influence (Veh. Code, §
11  23152, subd. (a)), being under the influence of a controlled substance (Health &
    Saf. Code, § 11550, subd. (a)), and unauthorized possession of a hypodermic
12  needle (Bus. & Prof. Code, § 4140). It also alleged Provencio had two prison
    priors (Pen. Code, §§ 667.5, subd. (b), 668) and four prior serious or violent felony
13  convictions within the meaning of the three strikes law (Pen. Code, §§ 667, subd.
    (b)-(I), 1170.12, 668). Before trial, Provencio pleaded guilty to the second and
14  third counts and admitted the truth of allegations he had two prior "strike"
    convictions and two prior prison convictions.
15       At trial, Smith testified as described *ante*. In Provencio's defense, his sister,
    Diana Provencio (Diana), testified she and Provencio lived in their mother's home.
16  Although Diana did not have permission to use Provencio's car, she drove it the
    day before Provencio's arrest, took screws out of its console, and hid a bag of
17  methamphetamine and a needle in it. That day she bought about "30 cents" of
    methamphetamine, but used only "about a dime of it." She lost the cap to the
18  syringe when she hurried back into the house to avoid her brother's detection that
    she had used his car. Despite her brother's arrest, she did not report her version of
19  events to police until April 7, 2004.
         The jury found Provencio guilty of possession of methamphetamine and
20  unlawful possession of a hypodermic needle.
         The trial court sentenced him to 25 years to life for possession of
21  methamphetamine under the three strikes law and to two consecutive, one-year
    enhancements for his prison prior convictions, for an aggregate term of 27 years to
22  life.

23  _____

24       [3] [footnote in original] At trial, Smith testified that based on his training and experience,
    it was common for people to conceal contraband and weapons in the gearshift housing.
25
         [4] [footnote in original] At trial, Smith testified that based on his training, fresh injection
26  marks appear as small red dots for about eight hours and may be oozing. After that period, a scab
    begins to form and is formed about 18 to 20 hours later. Methamphetamine can be injected, as
27  well as smoked, snorted or swallowed.

28       [5] [footnote in original] At trial, the parties stipulated the baggie contained .21 grams of
    methamphetamine, a usable quantity.

1  Provencio timely filed a notice of appeal. [Lodgment 4 at 2-4.]

2          **4.      Eighth Amendment Claim**

3          Petitioner contends that his 27 years-to-life sentence under California's Three Strikes

4  Law, Penal Code § 667(b)-(i), violates the Eighth Amendment because it is unconstitutionally

5  disproportionate and is contrary to clearly established law.

6          The Three Strikes law requires the imposition of a sentence of 25 years to life for a felony

7  conviction when the defendant has suffered two or more prior convictions for felonies deemed

8  serious or violent. Penal Code §§ 667(b)-(i), 1170.12(a)-(e). Under § 667(e)(2)(A), any felony

9  conviction may constitute a third strike and subject a defendant to a term of 25 years to life in

10  prison. But the trial court possesses the authority to strike a qualifying prior conviction to

11  mitigate the harshness of the otherwise mandatory sentence. *People v. Superior Court (Romero)*,

12  13 Cal.4th 497, 504 (1996). In determining whether to exercise its discretion to strike a prior

13  conviction allegation, the court considers "whether, in light of the nature and circumstances of

14  his present felonies and prior serious and/or violent felony convictions, and the particulars of his

15  background, character, and prospects, the defendant may be deemed outside the scheme's spirit,

16  in whole or in part, and hence should be treated as though he had not previously been convicted

17  of one or more serious and/or violent felonies." *People v. Williams*, 17 Cal.4th 148, 161 (1998).

18          In discussing the Three Strikes law, the Supreme Court noted:

19          When the California Legislature enacted the three strikes law, it made a judgment
               that protecting the public safety requires incapacitating criminals who have already
20          been convicted of at least one serious or violent crime. Nothing in the Eighth
               Amendment prohibits California from making that choice. To the contrary, our
21          cases establish that "States have a valid interest in deterring and segregating
               habitual criminals." *Parke v. Raley*, 506 U.S. 20, 27, 113 S. Ct. 517 (1992); *Oyler
22          v. Boles*, 368 U.S. 448, 451, 82 S. Ct. 501 (1962) ("[T]he constitutionality of the
               practice of inflicting severer criminal penalties upon habitual offenders is no
23          longer open to serious challenge"). Recidivism has long been recognized as a
               legitimate basis for increased punishment. *See Almendarez-Torres v. United States*,
24          523 U.S. 224, 230, 118 S. Ct. 1219 (1998) (recidivism "is as typical a sentencing
               factor as one might imagine").

25  *Ewing v. California*, 538 U.S. 11, 25 (2003).

26          Although recidivism statutes may be valid, "the Eighth Amendment's ban on cruel and

27  unusual punishments 'prohibits ... sentences that are disproportionate to the crime committed,'

28

1  and that the 'constitutional principle of proportionality has been recognized explicitly in this

2  Court for almost a century.'" *Id.* at 22 (citing *Solem v. Helm*, 463 U.S. 277, 284 (1983)). Three

3  factors may be relevant to a determination of whether a sentence is so disproportionate that it

4  violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty;

5  (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences

6  imposed for commission of the same crime in other jurisdictions." *Id.* at 22-24 (citing *Solem*,

7  463 U.S. at 292).

8     Petitioner strongly relies on *Solem,* the only case in which the Supreme Court held a non-

9  capital sentence enhanced by a state repeated offender law to be invalid under the Eighth

10  Amendment. In *Solem*, petitioner was a seven-time felon with an extensive criminal history over

11  11 years but his seventh and triggering felony for purposes of recidivist enhanced sentencing

12  was for uttering a no account check for $100. The state sentenced the petitioner to life

13  imprisonment without the possibility of parole. The Court determined that the petitioner's case

14  fell within the type of "exceedingly rare" or "extreme" case that would support a finding that his

15  sentence violated the Eighth Amendment. *See Andrade*, 539 U.S. 63, 72-73 (2003)(The precise

16  contours of the Eighth Amendment's gross proportionality principle are unclear, but it is

17  applicable only in exceedingly rare, extreme cases.)

18     In granting habeas relief, the *Solem* Court noted the petitioner was not a "professional

19  criminal," all his crimes were nonviolent and none was a crime against a person. The Court also

20  voiced proportionality concern for other criminals in the same jurisdiction: petitioner received a

21  sentence of life *without* the possibility of parole, *i.e.*, petitioner was treated more harshly than

22  other criminals in the same state who have committed far more serious crimes.

23     Provencio also relies on the *Ramirez v. Castro* case from the Ninth Circuit that found the

24  petitioner's 25 years-to-life sentence violated the gross proportionality principle. 365 F.3d 755

25  (9th Cir. 2004). In *Ramirez*, the petitioner's third strike offense was for the non-violent

26  shoplifting of a VCR, which was a wobbler offense under state law, *i.e.,* one that can be charged

27  as either a felony or a misdemeanor. In both Ramirez's and Provencio's cases, the offense was

28  charged as a felony.

1  Ramirez's prior criminal history was limited to two non-violent shoplifting offenses that

2  were charged in a single criminal complaint. For those two offenses, Ramirez served a one-year

3  sentence of incarceration in the county jail. As previously noted, the Ninth Circuit granted

4  Ramirez's habeas petition based not only on the facts that the triggering offense was a wobbler

5  that could have been charged as a misdemeanor and petitioner had a minimal criminal history

6  but perhaps more importantly the state's characterization of Ramirez's criminal history was

7  factually erroneous: petitioner was incarcerated only once, not twice, for the two shoplifting

8  offenses that were charged in a single criminal complaint. The Court noted that petitioner did not

9  have two attempts at rehabilitation.

10  Provencio also contends the factual analysis applied in the district court case, *Banyard v.*

11  *Duncan,* 342 F. Supp 2d 865 (C.D. Cal. 2004), should be applied to his situation. In *Banyard*,

12  petitioner's third-strike trigger offense was possession of a single-use amount of rock cocaine.

13  His criminal history included robbery and assault with a deadly weapon. The state court also

14  reviewed petitioner's long "rap sheet" that did not reflect convictions for drug possession but

15  only arrests. Banyard was sentenced to 25 years to life with the possibility of parole.

16  The district court first noted the importance of assessing the triggering offense. *Banyard*,

17  342 F. Supp.2d at 874. Banyard's triggering offense of a small quantity of rock cocaine was

18  "one of the most passive crimes a person can commit." *Id* at 875 (quoting *Solem* 463 U.S. at

19  296). Unlike other cases where the triggering offense represented the "continuation of a specific

20  pattern of criminal behavior for which the offender had been previously punished at least two

21  times before," Banyard's prior strikes for robbery and assault had no connection with each other

22  and were not a part of any other pattern of criminal conduct. *Id.* at 874. Of significant import to

23  the district court in finding Banyard's sentence grossly disproportionate was the state court of

24  appeals reliance on an incomplete criminal history record and arrests that were not prosecuted to

25  conviction: "The California Court of Appeal . . . made no attempt to ascertain the true nature of

26  his prior offenses." The district court chastised the state court because it merely summarized

27  what the "rap sheet" provided and concluded that Banyard was a recidivist with a history of

28  repeated criminal behavior and repeated failure to reform. *Id.* at 878.

06cv1760

1    In granting habeas relief, the district court found and concluded:

2        it was objectively unreasonable for the Court of Appeal to fail to analyze the
3        underlying facts of Banyard's convictions, and to fail to recognize the lack of such
         facts as to some of the convictions, in conducting the gross disproportionality
4        analysis.

5  *Banyard*, 342 F. Supp.2d at 880.

6        The *Solem*, *Ramirez* and *Banyard* courts took great efforts to distinguish the objective

7  factual situations from those cases that found habeas relief unavailable. Of course, it is not this

8  Court's task to determine whether it would decide the facts differently in the present case.

9  Instead, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ

10 if the state court identifies the correct governing legal principle from this Court's decisions but

11 unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable

12 application" clause requires the state court decision to be more than incorrect or erroneous. The

13 state court's application of clearly established law must be objectively unreasonable. *Andrade*,

14 583 U.S. at 75 (quoting *Williams,* 529 U.S. 362): *see also Ramirez,* 365 F.3d at 773("[H]abeas

15 relief is available to [petitioner] only if the California Court of Appeal's decision on the merits

16 of his gross disproportionality claim was contrary to, or an unreasonable application of, clearly

17 established federal law.").

18       In the present case, the California courts did not apply rules contrary to those clearly

19 established by Supreme Court precedent. The California Court of Appeal expressly applied the

20 "gross disproportionality principle" applicable to noncapital sentences, citing *Rummel v. Estelle*,

21 445 U.S. at 271, *Harmelin v. Michigan*, 501 U.S. at 994–95, *Lockyer v. Andrade*, 538 U.S. at 77,

22 and *Ewing v. California*, 538 U.S. at 21.

23       The state trial court looked at petitioner's triggering offense. The sentencing judge stated

24 that the triggering offense was "not, by any stretch of the imagination, the most serious of

25 offenses that we see coming before the court." But the judge highlighted petitioner's 20 years of

26 criminal conduct, 15 years of incarceration, petitioner's lack of positive action in dealing with

27 his chemical dependency, unsuccessful attempts at probation, and the repetitive nature of the

28 criminal conduct. In affirming the trial court, the California Court of Appeal noted that petitioner

06cv1760

1  was sentenced not only based on his current offense but on his recidivism.

2  Each of petitioner's relied-upon cases can be distinguished. Unlike the *Solem* case,

3  petitioner's sentence includes the possibility of parole. Unlike *Ramirez*, petitioner has an

4  extensive criminal history and his criminal history was factually accurate. Unlike the *Banyard*

5  case, petitioner's criminal record was complete and did not rely on arrests that were not

6  prosecuted. Thus, the state courts' rejection of petitioner's claim was not contrary to a result

7  reached by the Supreme Court in a decision involving materially indistinguishable facts.

8  As previously noted, this court may not in its independent judgment determine that the

9  relevant state-court decision applied clearly established federal law erroneously or incorrectly.

10  *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)("an unreasonable application of federal law is

11  different from an incorrect application of federal law). The Supreme Court has acknowledged

12  the state's interest in dealing with recidivists in a "harsher manner," *see Ewing*, 100 S. Ct. 1133;

13  *Solem*, 103 S. Ct. at 3013, and that giving effect to the state's goal of deterrence requires that the

14  gravity of the triggering offense be assessed in conjunction with a defendant's prior criminal

15  conduct. *See Ewing*, 123 S. Ct. at 1189-90.

16  Here, the state court's application of clearly established federal law was not objectively

17  unreasonable. Because AEDPA imposes a "highly deferential standard for evaluating state-court

18  rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court

19  decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) ( *per*

20  *curiam* ), petitioner is not entitled to habeas relief. See 28 U.S.C. § 2254(d); *Woodford v.*

21  *Visciotti*, 123 S.Ct. 357 (2002) (per curiam) (deciding that AEDPA "authorizes federal court

22  intervention only when a state court decision is objectively unreasonable"), reh'g denied, 123 S.

23  Ct. 957 (2003).

24  Based on the foregoing, the Court concludes that petitioner's sentence is not grossly

25  disproportionate to the offense. In upholding of petitioner's sentence, the California Court of

26  Appeal's decision was neither contrary to, nor an unreasonable application of, clearly established

27  federal law. Petitioner's case is not "the rare case in which a threshold comparison of the crime

28  committed and the sentence imposed leads to an inference of gross proportionality." *Harmelin*,

1  501 U.S. at 1005. Thus, Petitioner is not entitled to habeas relief on this claim.

2  **5.     Sixth Amendment Claim**

3  Petitioner argues counsel was ineffective at his sentencing by failing to investigate and

4  present mitigating evidence particularly in light of California's Three Strikes law. His ineffective

5  assistance of counsel claim will be successful only if the state court's post-conviction decision

6  was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

7  determined by the Supreme Court of the United States" or if the state court decision "was based

8  on an unreasonable determination of the facts in light of the evidence presented in the State court

9  proceeding." 28 U.S.C. § 2254(d)(2). As noted above, the only definitive source of clearly

10  established federal law under 28 U.S.C. § 2254(d) is Supreme Court precedent at the time of the

11  state court's habeas decision. *Williams*, 529 U.S. at 360.

12  **a.     Is *Strickland* Applicable?**

13  The magistrate judge noted that in a non-capital sentencing proceeding such as the

14  present case, *Strickland* is not applicable and therefore, there is no clearly established United

15  States Supreme Court case that address ineffective assistance of counsel in this setting.

16  Petitioner argues, however, that the Supreme Court has applied the *Strickland* test in a non-

17  capital sentencing proceeding, *Glover v. United States,* 531 U.S. 198 (2001), and therefore, the

18  magistrate judge's analysis is incorrect.

19  Recently, petitioner's argument was specifically addressed in *Vigil v. McDonald*, 2011

20  WL 5116915 (9th Cir. 2011):

21  > *Strickland*, however, only defines the standard to evaluate counsel in capital
   > sentencing cases and according to our case law, since deciding *Strickland*, "the
22  > Supreme Court has not delineated a standard which should apply to ineffective
   > assistance of counsel claims in noncapital sentencing cases." *Davis v. Grigas*, 443
23  > F.3d 1155, 1158 (9th Cir. 2006) (emphasis added); *see also Cooper–Smith v.
   > Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005) ("[I]n *Strickland*, the Court
24  > expressly declined to consider the role of counsel in an ordinary sentencing, which
   > ... may require a different approach to the definition of constitutionally effective
25  > assistance." (alteration in original) (internal quotation marks omitted)).

26  *Vigil*, *1.

27  In a footnote, the *Vigil* court noted that the Supreme Court in *Premo v. Moore*, 131 S. Ct.

28

1 733, 738, (2011), applied *Strickland* in the context of counsel's performance in assessing a plea

2 bargain: "The *Premo* court identified *Strickland* as 'the standard for inadequate assistance of

3 counsel under the Sixth Amendment' without caveat." *Vigil*, *2 , n.1.

4 The *Vigil* court noted, however, that

5
6
7
> [w]hether or not *Premo* is sufficient to call into question our prior decisions, it does not control the outcome here because it was decided after the state court decided Vigil's habeas petition and therefore was not clearly established law the state court was bound to apply.

8 *Vigil*, *2, n.2.

9 Thus, even if *Premo* now clearly establishes the application of *Strickland* to non-capital

10 ineffective assistance of counsel claims, petitioner's claim is not controlled by *Premo* because it

11 was not clearly established law when the state court decided petitioner's claim.

12 Because there was no clearly established United States Supreme Court case which

13 "squarely addresses" this issue, the state court's decision was neither contrary to nor an

14 unreasonable application of federal law in concluding that petitioner was not entitled to relief

15 with respect to this claim. *See Moses v. Payne*, 543 F.3d 1090, 1098 (9th Cir. 2008).

16 Consequently, petitioner is not entitled to habeas relief on this claim

17 **b. Does Petitioner's Sentence Meet the *Strickland* Standard?**

18 Even assuming that *Strickland* is the appropriate standard to be applied in this case,

19 petitioner has not met the two-prong standard. To establish ineffective assistance of counsel "a

20 defendant must show both deficient performance by counsel and prejudice." *Knowles v.*

21 *Mirzayance*, 129 S. Ct. 1411, 1419 (2009). In *Harrington v. Richter,* 131 S. Ct. 770 (2011), the

22 Court stated that:

23
24
25
26
27
> [a] court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. . . .The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." . . . "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

28 *Richter*, 131 S. Ct. at 787 (quoting *Strickland*).

1    The *Richter* Court also noted that the pivotal question in reviewing an ineffective

2    assistance of counsel claim under the Antiterrorism and Effective Death Penalty Act (AEDPA)

3    is whether the state court's application of the *Strickland* standard was unreasonable, which is

4    different than considering whether defense counsel's performance fell below *Strickland's*

5    standard. U.S.C.A. Const.Amend. 6. The question under the deficiency prong of claim of

6    ineffective assistance of counsel is whether an attorney's representation amounted to

7    incompetence under prevailing professional norms, not whether it deviated from best practices or

8    most common custom. *Id.* at 788.

9    Here, petitioner contends that his trial counsel failed to investigate and present mitigating

10   evidence at his sentencing. Petitioner has consistently contended that had his counsel highlighted

11   his history of physical abuse by his parents which caused him to run away; his homelessness,

12   including times when he sought refuge in tunnels along the Mexican-American border; school

13   absences and academic deficiencies; the motives underlying his prior strike offenses, which

14   included the need to provide for his young son; his ability, upon his last release from prison in

15   2000, to assume the primary role in caring for his newborn, premature son, while also

16   maintaining two jobs to support his family; his life stresses such as health problems of his

17   prematurely born son and ill wife, demands of working long hours to support his family, and his

18   failed second marriage, the judge would have stricken his strike priors and petitioner would have

19   received a lesser sentence.

20   But the record reveals that the sentencing judge was given a significant amount of

21   information concerning petitioner's childhood, his drug dependency and efforts at drug

22   rehabilitation, the nature of his past crimes, and his employment history. The sentencing judge

23   reviewed a ten-page probation report, a sentencing motion, the pre-sentence evaluation, and

24   letters from the petitioner's family. Counsel presented the judge with information to show

25   petitioner's criminal history was non-violent and fairly remote in time, and that the current

26   offense was non-violent.

27   As noted above, when the Sixth Amendment is applicable, the standard is the reasonable

28   competence of counsel in representing the accused. *See Premo*, 131 S. Ct. at 742 (citing

1    *Strickland*, 466 U.S. at 668) (emphasis added). "In applying and defining this standard

2    substantial deference must be accorded to counsel's judgment." *Id*. As the *Premo* Court further

3    explained:

4            [w]hen § 2254(d) applies, the question is not whether counsel's actions were
             reasonable. The question is whether there is any reasonable argument that counsel
5            satisfied *Strickland*'s deferential standard.

6    *Id*. at 740.

7          The state postconviction court's decision involved no unreasonable application of

8    Supreme Court precedent. Petitioner's counsel provided specific information to the court about

9    petitioner's background sufficient to be deemed competent representation.

10         Further, petitioner has made no showing of prejudice. "[A] court making the prejudice

11   inquiry must ask if the defendant has met the burden of showing that the decision reached would

12   reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

13         The information petitioner contends would have caused the sentencing judge to strike his

14   strike priors is not related to the reasons the judge gave for denying the motion to strike priors.

15   The sentencing judge focused on petitioner's recidivist behavior, the repetitive nature of his

16   criminal conduct, and his inability to maintain lawful conduct:

17           And then the continued criminal activity, including the first degree burglary, led to
             a prison commitment. And the fact that these prison commitments, following this
18           long effort at local rehabilitation, have failed, still has not had the desired effect. . .
             . [I]t is the inability to conform your conduct to the requirements of the law that
19           causes the court to deny the motion to strike. Petitioner's proposed mitigating
             evidence does not address the sentencing judge's rationale and therefore, would
20           not have changed the outcome.

21   [Lodgment 2, Vol. 6 at 608.]

22         The state courts' rejection of petitioner's ineffective assistance of counsel claim was not

23   contrary to, or an objectively unreasonable application of, clearly established federal law, and

24   did not constitute an unreasonable determination of the facts in light of the evidence presented.

25   Accordingly, petitioner is not entitled to habeas relief on this claim.

26        **6.        Certificate of Appealability**

27         Under 28 U.S.C. § 2253(c), petitioner must obtain a certificate of appealability to file an

28   appeal of the final order in a federal habeas proceeding. A certificate of appealability may issue

1  only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28

2  U.S.C. § 2253(c)(**3**). This standard is met "by demonstrating that jurists of reason could disagree

3  with the district court's resolution of his constitutional claims or that jurists could conclude the

4  issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

5  *Cockrell*, 537 U.S. 322, 327 (2003), citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

6  Because petitioner has not made a substantial showing of the denial of a constitutional right,

7  certificate of appealability is **DENIED.**

8        **IT IS SO ORDERED**.

9  DATED: January 17, 2012

10  _____
    M. James Lorenz

11  United States District Court Judge

12

    COPY TO:

13

    HON. CATHY ANN BENCIVENGO

14  UNITED STATES MAGISTRATE JUDGE

15  ALL PARTIES/COUNSEL

16

17

18

19

20

21

22

23

24

25

26

27

28